Next in Case 10-1219, Kappos v. Hyatt. Ms. Anders. Thank you. Mr. Chief Justice, and may it please the Court, Section 145 of the Patent Act permits a person who has sought a patent from the PTO and believes that the agency has wrongly denied his application to seek judicial review of that decision in district court. The Federal Circuit in this case held that the plaintiff in a Section 145 action may obtain a more favorable standard of review, de novo review, by flouting the PTO's rules during the examination process. Under the Court's approach, a plaintiff may present to the Court material new evidence that he refused or failed without cause to present to the PTO, and as his reward, he is given de novo review of the PTO's expert determinations on all of the relevant issues for three reasons that unprecedented regimes would not be allowed to stand. First, principles of administrative deference and exhaustion require that the PTO be given the opportunity to apply its expert judgment to all of the reasonably available evidence. For that reason, Section 145 should be interpreted as a safety-bound proceeding that permits applicants to introduce evidence to the Court that they reasonably could not have presented to the PTO. Scalia. Can you only get a 145 proceeding when you have new evidence? No. Scalia. Suppose I have no new evidence and I want to challenge. Can I bring a 145? Yes. Section 145 permits any applicant dissatisfied with a decision of the PTO. And on what basis does the Court decide the case? De novo? No. The Federal Circuit has held that in those cases substantial evidence review applies, and where the Federal Circuit gets that is this Court's case in Morgan v. Daniels. That was an action under Section 145's predecessor. There was no new evidence in that case, and the Court held that this was a proceeding in the nature of a suit to set aside a judgment, the judgment of the expert agency which had made its determination, and that, therefore, because this was administrative review, a deferential standard of review should apply. So it's quite clear that when the PTO's predecessor is the predecessor. All of the material language is the same. There's no material difference for purposes of this case. But the Morgan case involved, it wasn't a contest between the PTO and the would-be patent holder. It was an interference proceeding, wasn't it? That's correct, Justice Ginsburg. It was an interference proceeding, and that's because at the time Section 145's predecessor applied equally to interferences and to ex parte patent denials. But the Court's reasoning, its discussion of the predecessor statute did not distinguish based on the fact that this was an interference. And also this Court in the It's interesting that the language of Morgan and one of its companion cases, not companion in the sense of being heard at the same time, but on the same issue, Radio City case, both of them don't talk in the language of today. They don't talk about deference, they don't talk about substantial evidence. They talk about whether the PTO has expertise and presumptions that their fact findings based on their expertise have to be overcome with some convincing evidence. So they're talking in different language, but the concept they're talking about is one where the Court does accept findings of the PTO on the matters that involve their expertise and give them weight, substantial weight essentially, and only overturn it if the Court is, in the words of Morgan and Radio City, thoroughly convinced that they were wrong. So what's wrong with that standard? Everybody likes the deference language of today, but they were very clear in what they were saying. If the PTO made a finding, you decide whether that finding was based on its expertise, and if it was, you don't change it, Court, unless you're thoroughly convinced they were wrong. Is there anything wrong with that, with that articulation of what the standard should be in all situations, whether there's new evidence or no new evidence? Well, I think here we are suggesting that in 145 actions, when there is new evidence, Morgan's thorough conviction standard should apply. That reflects the fact that the Court needs to look at the new evidence, but because the PTO has made an expert determination, as the Court said in Morgan, that determination should not be overturned unless there's a high degree of certainty. And I would note that that is essentially what this Court did just last term in Microsoft v. I4I. There the Court said that when a third party is challenging the validity of a granted patent, that the third party should have to show invalidity based on a heightened burden of proof, clear and convincing evidence. And that reflects the same wisdom that underlies the statute. Sotomayor Let me tell you what my problem is with this case. It is the issue that Verizon raised and the lack of connection between the district court's holding and the circuit's court holding. The district court excluded the affidavit or the proposed arguments on the basis of them being new arguments that board rules precluded them from raising at the stage they did. The circuit court described the affidavit as new evidence. And the Verizon amicus brief says, Court, be careful, because it's not really clear what's new evidence in this affidavit and what's new argument. And that question troubles me for the following reason. Verizon posits that the issue of whether a description is specific enough is a legal question.  And the question is, why is there a distinction to which the PTO is not entitled to deference? Why, other than Federal Circuit and patent board precedent, is that right? And can you explain why this affidavit that was rejected is, in fact, new evidence and not merely new argument? Certainly, Justice Sotomayor. I think the district court did characterize this as new evidence. And the reason it did that is because Mr. Hyatt made a concerted strategic decision here to present his affidavit as new evidence. In form, this is factual evidence. This is a declaration containing proffered testimony that Mr. Hyatt would offer if there were a trial. So it is in form factual evidence. And in order to take advantage of the possibility of introducing new evidence in the Section 145 action, Mr. Hyatt argued that this was new factual evidence that should be covered. Sotomayor, could you tell me what, other than that it's in the form of an affidavit, tell me what in the content was new evidence. I want to get away from the labels and I want to get to the substance, because I've looked at all of these submissions and it sounds like what I read in briefs every day. Certainly. I think whether or not the ultimate question of whether the written description is sufficient is a question of law, it would be one that rests on several subsidiary fact findings, including what the ordinary skill in the art is, what a person of ordinary skill in the art would understand when he reads the specification and where in the specification there is support, there is description support for the claims that Mr. Hyatt possessed the invention that he claimed. And so I think when you look at what happened at the PTO, the examiner said, despite my expertise, I can't tell where in the specification your claims are supported. This is a 258 — it's a 250-page specification reprinted in the Joint Appendix. It has over 100 pages of diagrams, a source code, and 117 claims. And so the PTO asked for this information. Mr. Hyatt refused to present it, or he didn't present it, and then on rehearing, the board said that he had not had any cause not to present this new argument. And so at that point, Mr. Hyatt went into the 145 proceeding and he was a — he characterized this as factual evidence in order to get around, presumably, or it would be reasonable to try to get around the board's ruling that he couldn't present new evidence. Now, you certainly could characterize this as legal argument. We believe that we would win on that ground as well, even if this were a new argument, because certainly the PTO is entitled to enforce its rules here. And both the district court and the panel found that the PTO did not abuse its discretion in — in holding that Mr. Hyatt had forfeited his right to raise this argument. That's not — that's not an additional question presented that we — that we added here, because it's a very case-specific question. But at any rate, the entire case has now been litigated on the basis of this being factual evidence. Scalia's case is stronger if it isn't new facts, right? That's what you'd say. I'm sorry? Your case is stronger if, in fact, it's only new argument and not new fact. Certainly, I think it should be very clear that we would win on that ground. The en banc court here characterized this as new factual evidence and applied a rule that will govern if it's left to stand in all 145 actions, which would permit applicants to withhold evidence from the PTO. Ginsburg. Ms. Anders, one of the problems with, I think, your position is it sounds very strange to have two proceedings, one where you go directly to the Federal Circuit under 141, and then this other one where you go to the district court, where if that's not, as Judge Newman said, a whole new game, then why would Congress create two judicial review routes, one in the district court, reviewable in the Federal Circuit, the other directly in the Federal Circuit, if there's no difference, that is, if in both of them it's not de novo review, it is reviewing what the agency did under the ordinary standard for reviewing agency action. What's different about the 145 proceeding? Anders' Well, in the 145 proceeding, the applicant has the ability to introduce new evidence that couldn't be presented to the PTO. Kagan What kind of evidence is that, Ms. Anders? Anders' I think there are two primary categories, both of which can be very important in the examination proceedings. The first is oral testimony. The PTO doesn't hear oral testimony, but it is routine in the examination procedures for the PTO. Kagan So in the 145, an applicant can take all his written affidavits and say, I want to present oral testimony on these exact matters, but live. Anders' He could certainly bring that to the district court, yes. Now, the district court always, under general evidentiary rules, can say, I believe this evidence is cumulative, so I'm not going to hear it. But to the extent that the district court believes it would be helpful to hear oral testimony, for instance, if the PTO's determinations involved credibility decisions, then certainly the district court could hear that testimony, and that's often how this proceeding has been used. Kagan But to the extent the substance of that testimony was something that he could have brought to the PTO, that testimony, in your view, would be out of bounds. Anders' There would have to be a reasonable justification for not having presented it. Breyer It has to be a reasonable some kind of justification. Can you work with the word equitable? I mean, this was an equitable action. And could you say that the to the district court, well, of course, assuming you win on the second question, but on the first question, this is not an on-off thing. That's your real objection to the de novo standard. You say, but these are equitable actions, and generally an individual should not be allowed to run around the PTO. So you better have some kind of reason, but leave it up to the district courts to work with that word equitable and to, it seems to me there will be a lot of shading cases here where you can't quite tell if it's new or isn't new, and some parts are and some aren't. So just leave it up to the district court and say take into account the fact that people should not be allowed to run around the PTO and work equity. That's kicking the ball back. Now, if you like that, let me know. If you don't like it, tell me what we, what should we, you want an absolute rule, tell me why. Anders' What the standard we are proposing is that the district court has discretion to determine whether there is reasonable cause not to present the evidence to the PTO. And if it says there isn't, then it can't hear it? I mean, you imagine you are sitting there as a district judge and you think, oh, my God, they should have presented it, but this is the key matter forever. Do I really pay no attention to it at all? Well, I think it's no different from exhaustion and forfeiture rules in any other context. Except you have a history here. You have the history of the pre-APA section 145 where they apparently did take evidence in. Well, certainly in the early cases, they took new evidence in, but by 1952, which is when Congress reenacted this provision, you have the lower courts applying the Morgan standard and saying, based on Morgan's reasoning, because we know that the PTO is the primary fact-finder, because we know their decision is so important, we will apply limitations on new evidence, because we don't think that that evidence should be presented. And to go back to Justice Ginsburg's question, because your understanding of what they wouldn't have a reasonable opportunity to present, I mean, it's very, very narrow. It's a bunch of cumulative testimony that nobody would want to present and no judge would want to hear, and other than that, you are basically saying in all circumstances, well, they could have done that in the PTO. So then you have Justice Ginsburg's problem, which is these are two channels that are exactly the same. And you were beginning to answer that by saying, well, you can't have oral testimony before the PTO, but what else? I asked you what would be, what's different about 141 and 145 on your view, and you said one thing is oral testimony, what else? Well, the other primary category of evidence that could come in would be evidence that has a temporal component. There's a lot of evidence that could be relevant to patentability that develops only slowly or that might arise very late in the process. So, for instance, obviousness is a very common ground of rejection. But one thing that can be relevant to obviousness is if the invention, once disclosed, has commercial success. So this type of sales evidence can develop very late. Kagan. But I thought that your brief suggested that even with respect to that kind of evidence, a person can go back to the PTO. Is that right? For the most part, the record closes once the applicant files his brief on appeal to the board, and then it can be months or years before the board issues its decision. Now, there are a couple of avenues through which an applicant could still introduce new evidence, even when the board is considering the appeal, but both of those, as the process goes, that's the request for continuing examination and the continuation application, both of those have increasing downsides that require the applicant to abandon his appeal or give up some of his patent, the patent term that he would presumably get. So. Roberts, what if the new evidence is in reaction to the PTO's ruling? The PTO says, look, we're not going to issue a patent because you didn't show us that, you know, the valve in the back of the thing or whatever was novel, and we think that's important. And the applicant goes to, under 145, to the district court and says, well, I didn't submit that evidence because I didn't have any idea that that was going to be a significant issue, and I'm, you know, sorry, but, you know, I have a good basis for not thinking of that, and here it is. Is that the type of new evidence that could be admitted? Well, in the first instance, the PTO's procedures actually provide, they actually provide for the situation, and that's when the board or the examiner enters a new ground of rejection. Then at that point, the applicant has the right to reopen prosecution and introduce new evidence. This is an exception I thought you were telling us earlier that you generally can't get. Yes, I'm sorry. This is an exception that would apply when there's a new ground of decision. That is something that Mr. Hyatt could have tried to take advantage of. He didn't. He simply sought rehearing. But in any event, both the district court, the district court carefully considered the board's grounds of rejection and decided that this wasn't, that these weren't new grounds of rejection, and the panel affirmed that. But to get back to the difference between 141 and 145, I think Congress separated these two proceedings out in 1927. Before that, you had gotten an appeal first on the record, and then the bill in equity under 145. So Congress separated this in 1927, and it appears from the legislative history that its concern was streamlining the proceeding and having more efficiency in patent appeals. So it would be reasonable to conclude that there would be some number of applicants who, probably the majority of applicants who wouldn't have new evidence, who could go to 141 and simply get a final decision from a court after one court proceeding in the court of appeals. But the point is that there was a safety valve because the PTO couldn't consider oral testimony, and because, certainly at the time, oral testimony was not considered a safety valve. There was a major concern in interference proceedings where you'd often have two inventors saying, I invented it first, no, I invented it first, and you'd have this credibility fight. So it was very important at the time to provide a safety valve proceeding. Ginsburg. But you said that you could go in to court on 145 even if you had no new evidence. Yes, and Morgan, in fact, was a case like that, and it appears some applicants may have done that. So if you do, in that case, would there be any difference between 141 and 145? Other than you go to a different court? No, I don't think there would be for an applicant who had no new evidence at that time. But I think the other alternative to tree 145 is an entirely de novo proceeding that allows any new evidence that the applicant failed without cause to present to the PTO, thereby obtaining de novo review. It's not evident policy justification from Congress to provide it. That was Judge Newman's view, but the in-bank court took the middle position. Often in trial court evidence problems, the judge says, well, it goes to its weight, not the admissibility. And it seems to me that's what Judge the in-bank majority was saying, that the fact that it was not presented before or that it's points in a different direction from what the PTO found goes to its weight, not its admissibility. In other words, they will give consideration to the fact that it wasn't introduced and may be discounted as a result, unless there's a reason. So it just depends on the facts of the case. Number one, am I reading or am I summarizing the in-bank majority correctly? And number two, why isn't that a sensible way to interpret the statute? So, as Justice Ginsburg is suggesting, you give some meaning to 145. It performs a function that 141 does not. Well, I think you're correct, Justice Kennedy, that the in-bank court believed that administrative deference principles didn't weigh against its conclusions because the district court could give more weight to the new evidence. But that is not an adequate response, we don't think, because this is still de novo review. So once the applicant introduces new evidence, the manner in which the district court evaluates the PTO's conclusions has entirely changed. This is no longer a deferential standard looking at the evidence. This is actually de novo review with no difference given to any of the PTO's fact findings, even on the evidence before it. And we don't think that's a sensible way to read the statute because there's no basis in the text of the statute for a bifurcated standard that would provide for deferential thorough conviction review when there's no new evidence, but then it's de novo review. Kennedy, Well, then you're saying that we have to choose either between your position or Judge Newman's position. Well, Judge Newman's position I think is inconsistent with Morgan because Morgan was a section, a revised statute, 4915 action, it was a 145 action with no new evidence, and the court there said that the thorough conviction standard should apply because this is administrative review. So to hold that 145 requires de novo review, even when there's no new evidence, would be to overrule Morgan. Kagan, But Morgan only talked about the standard of review, isn't that right? Morgan has very little to say about what types of evidence ought to be admitted in this proceeding. And one thing we could do is to separate out these two things and say, you know, we think that there's a basis for one, for let's say giving the government a fairly deferential standard of review, call it clear and convincing, call it thorough conviction, but go the other way, rule against you on the evidentiary point, which Morgan says nothing about. Well, I think Morgan did not directly address the misability of new evidence. But by saying that the PTO is the primary decisionmaker and that the court should not lightly set aside what the PTO does, it invoked administrative deference principles, which in turn show why all of the reasonably available evidence needs to be presented to the agency. And I do think that it wouldn't make sense to have a de novo standard of review for patent denials any time new evidence comes in, largely based on this Court's decision in Microsoft. There the Court rejected the argument that a third party who had no opportunity to present evidence to the PTO should not be held to as high a standard of review. So it would be particularly perverse here to say that de novo review should apply whenever a patent applicant puts in any new evidence that they have. Sotomayor, I think you're confusing the nature of the review, which is de novo new, with the burdens that attach to the proof. Those are two different concepts, and so that's what Microsoft said. Don't confuse burdens with standards of review. That it's de novo review is one thing, but even in de novo review, we often give more weight or presumptive weight to some facts as opposed to others. And that's what I think Morgan was talking about. Morgan was very clear, whether it was new evidence or not, you give you accept as valid whatever the PTO does, and you require to be thoroughly convinced by new evidence or not that they were wrong. I don't know why that standard can't apply in any situation. I think that's what Judge Newman intended, although he didn't say that. So why are we confusing the standard of review with the burden? Well, I think that the presumption of validity and the need to give deference to the PTO's determinations are essentially two ways of saying the same thing. As Microsoft noted, the presumption of validity comes from the assumption that the agency is presumed to do its job. That's what Judge Rich said. And that, in turn, is what the Court said in RCA, where it announced the presumption of validity, and there it relied on proving it. Sotomayor, I have two problems with your argument. The first is, and I know that it may be unique to me, because many of my colleagues say that you don't rely on legislative history. But I'm not relying just on legislative history. I'm relying that the legislative history is replete with the Commissioner of Patents himself saying that Section 145 required de novo review, and witness after witness tried to argue for Congress to change it, and it didn't, arguing that it required de novo review. Second, our cases repeatedly describe it as de novo review. So you've got to get past that. And then you've got to get past that, between 1927 and 1945, you have Barrett on your side, but there are plenty of courts, including the Second Circuit and a very respected jurist, Learned Hand, saying that if you exclude new evidence, it should only be if it's on principles of estoppel, that someone intentionally withheld evidence from the BTO. So how do you deal with a record that doesn't basic — that doesn't support your basic arguments? I think the record does support our argument, Justice Sotomayor, because what you see in the early 20th century, after Morgan had construed this as administrative review, you refer to the 1927 hearings. There, I think, many of the people used the phrase de novo in a very loose way that probably was a result of its dating before the APA. They referred to it mostly as a contrast between the original action and the appeal. And that's the same thing you see in the early cases. For instance, Globe Union referred to this as a de novo proceeding, even as it said that the thorough conviction standard should apply and new evidence should be limited because this was administrative. So I don't think you can place very much weight on the use of the term de novo. I do think it's notable that every time there was an objection in the cases before 1952, the courts applied limitations on new evidence. Dowling, the case you referred to, that was dicta. The Court discussed the standard but didn't actually apply it there. And so I think the most natural inference is that in 1952, Congress looked to Morgan and it looked at these cases and it viewed this as an administrative review proceeding,  Roberts. Thank you, counsel. Mr. Panner. Mr. Chief Justice, may it please the Court. The language of Section 145, the structure of the judicial review provisions in the Patent Act, the long history of the provision, and this Court's constructions of its predecessors all make clear that the government's argument that a plaintiff is barred from introducing new evidence in an action under Section 145, except in the unusual, if not extraordinary, circumstance where the applicant had no opportunity to introduce the substance of that evidence, is incorrect. Section 145 does not follow the modern norm of on-the-record review. Such review is afforded under Sections 141 to 144, and no principle of administrative law supports the government's no-opportunity standard in situations where Congress has authorized the trial de novo to obtain relief from adverse agency action. The problem I have with your submission, you say there are basically two routes to get review of a denial by the Patent Office. The first is under 141, you appeal to the Federal Circuit, right, and in that situation you are limited to the record before the agency. Yes, Your Honor. On which you lost. And there is deference to the agency, which ruled against you. Under 145, you can add new evidence. You could address questions that the PTO raised, saying you don't, you haven't dealt with this valve in the back, and you can say, well, here's new evidence dealing with that. There is no deference to the agency, and to some extent you can pick which judge you want to hear, to the extent you can do that. Why would anybody proceed under Section 141 instead of 145? Well, Your Honor, to be clear about what is permitted under Section 145, it is correct that new evidence can be permitted to go to issues that have been properly ruled on by the PTO in the course of ruling on the ex parte application. The reason that appeals to the Federal Circuit are quite common is because often the issue that is the basis for the rejection is a legal issue. And as to those issues, there is de novo review in the Federal Circuit. The Federal Circuit will be ruling on those legal issues in time in any event. It is really in the circumstance where there is a factual question as to which new evidence is relevant where the applicant will avail himself of what 141. So that in every case where it's anything other than a purely legal issue, you would go under 145? Well, Your Honor, if you had evidence that you wanted to present and the remedies of the PTO were inadequate for one reason or another, but in thinking about the practical implications of the procedural option that Section 145 affords, it's important to recognize that this procedure has been in place for generations, and it has been understood by the patent bar as reflected in decisions of the court. I know that's why I'm really confused, because I take it that people don't often use 145, right? They almost always appeal to the Federal Circuit. Well, I think that the number of cases involving rejections that are taken up into the PTO is limited in part because applicants often have an adequate remedy before the PTO, but where there is a circumstance where there has been a final, a board action, a case like this one, where the grounds for rejection, not meaning the technical grounds, because the grounds of written description had been identified in the examiner's decision, but where the reasoning that justified the rejection was quite new in the board, and where there were — there was factual evidence that the applicant wanted to submit to a generalist district court to permit the district court to understand where in the specification the support for these elements was. Well, Ms. Anders told us that there's a procedure before the PTO that lets you deal with these, that sort of something came up that you didn't think about, and you can address that. Your Honor, what Ms. Anders was referring to, I believe, is the possibility to reopen where there are new grounds for a rejection. There were no new grounds here because it was still a written description rejection. The applicant did argue in appeal — in filing for rehearing that the explanation that the board had provided was one that he had not been able to discern from the examination — the examiner's rejection. And if you just look at the record in this case, when the examiner said that there was support lacking for the features that were — where the board eventually did affirm, there is no explanation as to what element was missing, why the feature was not supported in the specification. The board provided that reasoned explanation, and the applicant tried to respond, and the board refused to — to — Breyer. Do you think, in terms of the second question on the standard of review, I'm somewhat — I'd like your response to the approach, that where there is ambiguity — I mean, you're going to win if there's no ambiguity — but if there's ambiguity, I'd think that 1946 makes a difference. That is, preceding that time, every agency went its own way, and you had dozens of specialized methods of review. And the whole purpose of 50 years of administrative law has been to try to create uniformity across agencies in a vast Federal government. And now, what was obviously worrying me in the first case, and this case, too, is that we're chipping away at that. And that will be very hard for lawyers and for ordinary people to understand if we suddenly go back and create specialized rules in favor of each agency that always wants a specialized rule. Of course, they think what they do is terribly important, which it is, I'm sure. But that's — that's why I'm saying, if ambiguity on the standard of review, you go with uniformity. Right. Well, there's really two points, Your Honor. With respect to standard of review, which is separate from the question of the admissibility of the evidence, on standard of review, the APA says that where there's a trial de novo, the standard is whether the finding is unwarranted by the facts under 2F. So that's the— That begs the question, in a sense, because they're interlinked. I mean, the same reasons would support that it's not a trial de novo, even if you introduce some new evidence. It is a — it is an old trial with some new evidence, and there will be a thousand different variations on that theme. I think that goes to Justice Sotomayor's point, really, which is that there is a trial de novo, and clearly, at a minimum, what the courts are talking about when they refer to this, not five times, not ten times, but dozens of times, this Court several times, lower courts pervasively, when they are talking about a de novo proceeding, they are talking about the fact that the applicant can introduce new evidence to attempt to overcome the adverse action that was entered by the APA. So the new part, I get that. Okay. And then the question becomes what is the appropriate standard of review when there is new evidence going to this question. And the answer here goes, I think, to section 2F says that there's a — the question is whether it's warranted by the facts. There is, then, the question of what weight may be afforded to a particular agency — agency determination. At a minimum, the fact that there has been a rejection shifts the burden. When an applicant goes to the PTO, there's an assumption of an entitlement to patent unless the PTO can show that the applicant is not entitled to that patent. So the burden is on the PTO. Once there's been a proper rejection by the agency and the board has ruled, then the applicant bears the burden. So at a minimum, there's been a shifting, and the applicant would then bear the burden. And as a practical matter, as the Federal Circuit indicated, the district judge will weigh the evidence before it, including the new evidence and the findings by the agency, in making its determination as to whether the applicant has carried — carried his burden to show that he's entitled to the patent. Kennedy, if the judge does that, what — how does he articulate the weight that he gives to what the PTO finds? Does he say, I give deference to this, I give substantial deference? This — this was all discussed. Page 9 of your brief, you summarize what the majority opinion of the in-bank court did. Yes, Your Honor. And in that connection, it's on the same line. Do you — do you agree with that summary? I do, Your Honor. That is to say that what the Federal Circuit recognized is, that in determining the weight to give to new evidence and determining what weight to give to the prior determination of the agency, it's appropriate for the district court to look at the circumstances of the new evidence. And one of the things that's — this is an equitable — was an equitable action, and, of course, the judge is sitting without a jury. In Microsoft, there was obviously concern by this Court that there not be shifting standards of proof that would be confusing to a jury and could lead to collateral litigation about that. Where a district judge is making a determination about a factual issue, the district judge can, as a practical matter, quite reasonably determine what was before the board, what did the board decide, what was the basis for that, how strongly supported is it, versus how — to what extent is this new evidence something that really requires me to look at this anew. Well, in line with Justice Breyer's question, can you give us an example of some other agency review proceeding that is somewhat like this, or is this just unique? I don't think it's entirely unique at all, Your Honor. That is to say, for example, in proceedings where there's orders to pay money by the FCC, the findings of the agency are given prima facie weight in an action — in an enforcement action. And so new evidence is permitted, and the district judge would make a determination based on the record and the new evidence. But the party or the agency seeking to enforce the prior order would be able to rely on those factual findings to — as prima facie evidence, where if there was no contrary evidence, it would actually establish those facts. There are other administrative review schemes that do afford trial de novo in which the — you know, there may be more or less deference to whatever the agency did, depending on what the record may reflect about the considered judgment of the agency. Are there limits on the new evidence that can be produced? Are there any limits in your view? Well, Your Honor, I think that the principle of estoppel that was recognized in Barrett is not one that we're challenging. That is to say, in a circumstance in which an applicant — and of course, that was an interference proceeding, and it's perhaps easier to foresee this happening in an interference context. But in that case, the plaintiff had actually suppressed, had directed witnesses not to answer questions that went into a particular factual area. And then when — after appeal and when the district court action was brought, attempted to introduce the very evidence that he had — that the applicant had deliberately suppressed, and the district court said, look, that is — gives rise to an estoppel which seems to me a generally applicable principle. Breyer, if you're willing to accept that, then what about broadening that to prevent people from running around the PTO and simply saying, unless the person, the patent — the potential patentee, unless he wants to — unless he is shown, he can show that he's innocent, that is to say, it wasn't deliberate, it wasn't negligent, it wasn't a part of a trial of a strategy, unless he is shown that he's innocent. Unless he shows he was totally without sin, in some form of words, in not introducing the evidence the first time, he can't introduce it now. I think the difficulty with that, Your Honor, is not only is it inconsistent with the practice of the courts, which have always recognized that, but it also ignores the fact that there needs to be decisions that an applicant makes about what evidence to present to the PTO. And there may be good cause for not presenting evidence in the PTO that becomes quite relevant once. Breyer, I would say that, say, unless he can show that there was good cause for his not having introduced it before the PTO, he — the court now won't consider it. Well, Your Honor, we would certainly meet that good cause standard in this case. But the thing that I think is difficult about that standard is that it could potentially lead to all sorts of collateral litigation. In a typical case, for example, an applicant will seek to introduce new expert testimony that either was not or was — is additional to whatever was issued — was offered in the PTO. Often, expert testimony will not be offered at all in an ex parte application. Sotomayor, so give us the standard, and how is what the good cause that you're somehow willing to accept different from the government's reasonable cause standard? And equity seems to have required an intentional or bad faith withholding. Is that what you want to limit yourself to? What do you do with sort of the in-between, the intentional and the grossly negligent? Just, Sotomayor, to be clear, the proper standard is what does not permit exclusion of evidence because there was good cause to present and it was not. The standard for which we think is supported in the cases is one that would permit the introduction of evidence, as the Federal Circuit said, consistent with the rules of evidence and civil procedure. That's why principles of estoppel, which are reflected in ordinary equity practice, not just administrative review context, would be applicable and could be used as evidence. Sotomayor, so what do you see the limits of that estoppel equity principles? I think that's what Justice Breyer was referring to. What would be the contours of your equity limits? And I think that looking at the cases that were decided before 1952, which everyone seems to agree is the magic date, the furthest that any court went was the decision in Barrett. And it's interesting that the panel decision in this case also relied on the idea in Barrett. Sotomayor, that's a little bit unfair to characterize the cases as limited to that. Some talked about negligence. And some courts thought it should be intentional. There was a debate back then. In the court of appeals, Your Honor, the only exclusion of evidence was from Barrett. And that was a case that involved, again, directing a witness not to answer, the suppression of inquiry into a particular factual area where the applicant then changing his story and claiming a different date for reduction of practice and a different basis for reduction of practice than had been argued before the PTO attempted to introduce the evidence that he had suppressed. So that's a very different circumstance. And the courts, the decisions are actually at pains to say that Barrett should not be overread. The Third Circuit in the Carborundum case said that. The Nichols case, which we've cited in our brief, said that. And of course, as you pointed out, Judge Hand observed that in the Dowling case. Globe Union said that. So even the cases that the government itself relied on were accepted evidence, despite the arguments that were made by the defendants in those cases that this was evidence that should have been excluded because it could have been presented and did consider it. And that brings us, I think, there's been a lot of discussion about Morgan and the standard of review and what Morgan has to say about that. And the critical point that this Court recognized in Microsoft was that Morgan is one of the early cases, and then — and Radio Corporation is another, that depend on an idea of the presumption of validity, which, of course, was then adopted by Congress in Section 282 as a statutory presumption that was given that common law meaning that required clear and convincing evidence. But the clear and convincing evidence is to overcome the grant of a property right to the defendant in those cases. What's critical in Morgan is the fact that the patent office had granted a patent to the defendant, and it was a challenge to the validity of that patent that the plaintiff's case relied on. And it's — and that's absolutely clear because the Court cites to Johnson v. Towsley, which is a case involving a land grant. And what the Court says is, our presumption is that when the executive has the power to give property rights, we don't get to review it. Now, in this case, we see a limited exception because there's a statute that actually tells us we have to do it. But that exception is going to be limited. But if you look at what Morgan relies on, Morgan is not relying on agency expertise. It's relying on agency authority, which is a different matter. And so — and the authority that the agency had to grant a property right. In the conception of the Court of 1893 and the administrative law that existed in 1893, the fact that there was no property right being challenged in an action where there was an effort to overcome a rejection means that this idea about the presumption of the validity of the rights that have been granted by an executive department doesn't come into play. There have been no rights granted by the executive department. And there's a new proceeding in which, to quote Professor Merrill's article, the Court had the whole case. And that's really reflected in the language that Congress chose. Now, of course, that — the differences between what Congress provided under Section 145 and the modern administrative review do lead to some questions. There is the question, you know, what should the standard be if there is no new evidence, which, you know, is a question. Ginsburg. And on that, I think you're not taking the position that Judge Newman did. I think — didn't you say that if no new evidence is introduced in a 145 proceeding, then the Court engages in APA-style review? Your Honor, Judge Newman said that if there — that all findings should be de novo in a Section 145 action. The majority of the Enbank Court said that if there's no new evidence, relying on what the Federal Circuit had held for many years, that if there's no new evidence, then the standard would be the substantial evidence standard that would apply on appeal. And that's just — And you agree with that? We haven't taken a position on it, but let me suggest why. It might be right, Your Honor, which is that Section 141 and Section 144 do — this Court in, you know, held in Zerko that once you are in a situation where there is no new evidence, and as an aside, Zerko emphasized that Morgan was a case that was on no new evidence, where you have a case that's on no new evidence, the APA standard of review, substantial evidence, arbitrary, capricious review applies. And it might — this might be the sort of narrow circumstance where to apply a de novo standard, even though that may be otherwise suggested by the language of Section 145, would create an anomaly, as this Court recognized in Zerko. But it seems to me you are introducing such a gamesmanship. Anybody who wanted to get out of substantial deference under the APA just has to present an expert. That's what makes little sense to me. Trying to differentiate. Now we are hair-splitting in a very minute way. Right. I don't think that's fair. Articulate a standard that would — Newman is suggesting total de novo review with no reference to any kind of presumption applied to the PTO decision. I'm not sure if— Another way to look at it is the way I suggested, which is it doesn't matter whether there's new evidence or not, what is the level of respect that you're going to give to the PTO factual findings? And, Your Honor, I think that the standard of proof is one of — is the preponderance of the evidence. And the question of what weight, as the Federal Circuit said, what weight to afford to that prior finding of the PTO would depend on what the record showed. That is the — as the facts of the case may appear in Section 145, it requires the district court to look at the findings and look at the new evidence and to then make a determination. Sotomayor, does the language of Morgan be convinced that the PTO was wrong? As Section 1 — as I say, the language of Morgan deals with a circumstance in which there's a challenge to the validity of an issued patent. The action that was at issue, the action as to which the validity was being challenged was not the denial of the patent to the applicant. It was the fact that the PTO had issued a patent to the defendant in that case. And so there was a collateral attack, effectively a collateral challenge to the validity of that issued patent. And that's why Radio Corporation of America cites Morgan, and that's how, you know, it's relevant to the — this Court's, you know, decision in Microsoft that the statutory presumption of validity carries this heightened standard of proof. Breyer, I couldn't suppose you're a lawyer, back to the Chief Justice's question, as you are, and you have the client there, and you're thinking, you know, if he prints all his evidence before the PTO and they say, no, we've had it, I mean, there we are. But if we hold back something, well, then we're going to get not — they get de novo review and a district court. Boy, but if we're too obvious about holding back something, we run into the estoppel rule. My goodness, you're in a mess, it seems to me, trying to advise a client what to do in that situation. You better not say hold something back. On the other hand, if he does, he's pretty advantageous. How do you deal with it? You see what we're doing? I think the — I understand the concern, but the practicalities of patent prosecution practice are that no applicant would hold back evidence in an effort to produce that sort of tactical advantage. Because one's one's. I'm sorry, go ahead. I think because it's, frankly, more straightforward and easier to try to meet those objections in the office. That's what usually happens, is that there's a dialogue with the examiner to try to meet the grounds for rejection. One of the things that I think is important to take into account with respect to the context of this case is there were a vast number of rejections. There was not just a rejection on written description and enablement grounds, but there were rejections for double patenting, there were rejections for anticipation, there were rejections for obviousness. And every single one, every single one of those grounds for rejection was overcome in the appeal before the board. And many of the written description rejections were overcome in the appeal before the board. And with respect to every one, if one goes back and reads the examiner's decision, the examiner did provide an explanation as to what was lacking with respect to certain elements of the claimed invention. And with respect to every single one of those, the board reversed. So where the applicant was provided a fair opportunity to try to meet the concerns, the applicant did so and the board ruled in his favor. And he again attempted to do this. There's no question of sandbagging here. The applicant brought these arguments to the board in the rehearing petition, in the request for rehearing, and said, here's my answer to your more focused explanation, and they refused to hear it. So as a practical matter, I think that you don't have to take my word for it again, because this procedure has been in place for so long and problems have not arisen. And even if there were uncertainty as to what the precise standard for admissibility was, the applicants would have every reason to test that and to try to do something along that line if that were a realistic option and favorable. The fact of the matter is that that has not happened because the applicants have every reason in the world to pursue the application with vigor before the office. And the Federal Circuit, which of course is more familiar with the patent application process than any other court, had no concerns that the rule that they were adopting would lead to abuses. Roberts And I guess as a practical matter, these things all end up before the Federal Circuit anyway, right? That's right, Your Honor. And I suppose if you had the same case and one is coming up under the 141 and the other under 145, I suppose it's theoretically possible they could reach different results because of the different standards of review. Well, Your Honor, you can't do both. No, no, I know. I'm not saying the — the point is that although they all come before the Federal Circuit, they may come to them in a very different posture that would cause the Federal Circuit to rule differently if you had the same case under one and under the other. Well, Your Honor, it wouldn't be on the same record. If it were on the same record, then presumably the issue that would be presented would be quite similar. The only time I can see that — so in other words, if there were a different record, it's true that the Federal Circuit's review of the district court decision would be — it would be the difference that this Court recognized in Zerko. It would be the court-court standard of review, which is — gives perhaps slightly less weight to the decision of the district court than the court agency review. But that doesn't seem like an advantage in this — in a circumstance, at least, where an applicant has — has prevailed. The applicant would be more likely to see the victory taken away by the Federal Circuit. Unless the Court has questions. Thank you, Your Honor. Roberts. Thank you, Mr. Panner. Ms. Anders, you have three minutes remaining. Thank you. This is an action for judicial review of agency determination. This is an action that — that requires the patent applicant to — to seek a property right from the agency, to have it denied, and to challenge that in court. And as a result, this Court said in Zerko that this is review of an agency determination, and therefore, Morgan's deferential standard should be carried forward into the APA. And in considering Morgan, the court in Zerko did not consider that it was — whether a property right had been awarded or not, it was simply that the agency had made a determination in its expertise, and I think that goes to why it would not be sufficient for the court simply to weigh the evidence differently. In every other agency — judicial review proceeding of agency action, the rule is that the agency is the primary decisionmaker. The agency has to consider the evidence first and make a determination. That aids judicial review. It allows the agency to apply its expertise. And we generally don't think of the court as being the one who should make the first determination on issues of fact. And that's particularly true of Morgan. Scalia, but you have a strange statute here. I don't know any statute that — that reads this way. As the facts — as the facts — where is it? As the facts may — as the facts in the case may appear. That's — Well, that language was in the statute in Morgan when the court construed this as judicial review. And I think that there would have to be a compelling reason in order to interpret the statute to permit an agent — to permit the applicant to introduce evidence that he failed without cause, without justification, to provide to the agency. And I don't think that Mr. Hyatt has shown any such justification. Well, but I guess the compelling reason is the statutory language, and especially with respect to the admissibility of evidence question. I mean, the standard that you suggest just can't be derived from the statutory language, isn't that right? Well, I think certainly there's an exhaustion requirement within the statute. The board has to have considered the application, and therefore it would make no sense to have the board consider the application if it didn't have to consider all of the evidence that was provided. So I think in that sense, you know, the standard that the Federal Circuit put in place and that Mr. Hyatt is proposing really is providing — Sotomayor, why didn't the Court just say what you said? If it — not the Court, Congress. If you admit that Congress intended a Section 145 action to permit new evidence, if it wanted to limit that evidence to something that could not have been found with due diligence or whatever your limitations are, why did it speak more broadly? I mean, the statutory language suggests, as the facts in this case, not in the case before the PTO, as law and as equity might permit, this is very broad language. Well, so the language could be taken to suggest that some new evidence is admissible, but I think then we look to the fact that this, just like Section 141 is a judicial review proceeding, and there should have to be compelling reason before we deviate from the normal deferential standards that apply when this is — when a court is reviewing an agency's determination. Thank you, counsel. The case is submitted.